John H. McCOY

v.

STROUD & COMPANY, Incorporated, and George S. Hundt, Appellants.

No. 16273.

United States Court of Appeals
Third Circuit.

Argued Feb. 16, 1967.

Decided March 20, 1967.

---

George P. Williams, III, Philadelphia, Pa. (William T. Hangley, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., on the brief), for appellants.

Charles M. Solomon, Philadelphia, Pa. (Nochem S. Winnet, Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., on the brief), for appellee.

Before SMITH and SEITZ, Circuit Judges, and JOSEPH S. LORD, III, District Judge.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The defendants appeal an order of the District Court granting plaintiff's motion for summary judgment for the sum paid by him to the corporate defendant for the purchase of shares owned by defendant. Apparently, the action of the trial judge was based upon his finding of an unexcused failure to deliver a certificate evidencing such shares.

Plaintiff's complaint against the corporate defendant ("Stroud") and the individual defendant ("Hundt") consisted of three counts; the first was under the Securities Act of 1933, the second was under the Uniform Commercial Code of Pennsylvania, and the third was under the common law. Under each count plaintiff sought to recover judgment for the money paid Stroud for the purchase from it of 1,000 shares of stock of Renwell Industries, Incorporated ("Renwell"). The individual defendant ("Hundt") was Assistant Vice President of Stroud and was its active agent in negotiating the sale involved.

The defendants answered and both parties then engaged in limited discovery. Thereafter plaintiff's motion for summary judgment was granted. No jurisdictional question is involved. It is tacitly conceded that plaintiff sought and obtained its summary judgment for the full purchase price on the basis of its Commercial Code and common law counts. It is also clear that the relief plaintiff obtained was bottomed on principles of rescission unrelated to proof of fraud.

Because we are dealing with a grant of summary judgment to the plaintiff we proceed to state the "facts" of record in a light most favorable to defendants. In October 1963, a block of 3,000 shares of Renwell stock was offered to Stroud for sale for "investment purposes" only. Apparently the sellers were individuals who received the stock as consideration for the sale of their interest in Information Products, Inc. to Renwell. Renwell

had not registered the particular shares with the S. E. C. and thus they could not be freely traded. For this reason they were offered to Stroud at a price substantially below their then over-the-counter market price. The attorney for Renwell represented to defendants that the shares would be registered within 4 to 6 months, at which time they would become freely transferable.

Apparently the 3,000 shares of Renwell were purchased by Stroud, which in turn sold them to various of its customers at the discounted price. We say "apparently" because that is the theory upon which the matter is tacitly presented to us.[1] We shall accept that theory for purposes of disposing of the appeal. Renwell transferred the 3,000 shares, under one certificate, to Stroud's nominee. Renwell made the transfer on the condition that for its protection each of the parties purchasing such shares from Stroud submit in accordance with the recognized procedure under the Securities Act a "letter of intent" stating that the shares were being purchased for investment, etc.

About October 14, 1963, plaintiff purchased 1,000 shares of the Renwell stock from Stroud for cash. Stroud's records thereafter reflected plaintiff's equitable ownership of 1,000 Renwell shares. These shares, of course, were represented by the certificate held by Stroud's nominee. Plaintiff delivered the required "letter of intent". There is also in this record an undated letter addressed to Stroud and purportedly signed by plaintiff, although he denies that it is his signature, which authorized Stroud to hold his certificates in its name or the name of its nominee "unless and until otherwise specifically directed by me/us." This letter further provided that the instructions were to "remain in full force and effect unless and until written notice of revocation hereon by me/us shall have been received by you."

The record contains no evidence as to a written revocation, although defendants make no point of this fact.

The parties agree that at the time plaintiff purchased his Renwell stock there was an oral agreement made between Stroud by its agent Hundt and plaintiff fixing the time when delivery would be made of the certificates evidencing the purchase of the shares. They disagree testimonially as to the terms of that agreement. At this point it is sufficient to note that plaintiff says that under the agreement Stroud was relieved of any duty to deliver the certificates until six months after the purchase. Stroud contends that the agreement provided that it was to be under no duty to deliver the certificates until the shares were registered. In any event, at a date some six or more months after the purchase (exactly when is in dispute) plaintiff admittedly commenced to demand his certificates. The defendants' testimony tends to show that Hundt made repeated attempts thereafter to obtain plaintiff's certificates by having Renwell register in his name 1,000 shares of the stock registered in its nominee's name. Defendants place the blame for the delay on Renwell's agent. When the transfer had not been accomplished by June of 1965 plaintiff commenced this action. A few months thereafter Stroud obtained from Renwell a certificate for plaintiff's shares registered in his name and tendered it to him. The tender was refused at a time when the quoted market value of the shares had declined well below their purchase price. The shares have never been registered by the S. E. C.

It is important to note at the outset that we are concerned with a sale by Stroud as principal. Thus, we are not involved with principles governing the obligations of a broker acting as such. We turn then to the pertinent language of the Pennsylvania Commercial Code (Title 12A, Purdon's Pa.Stat.Ann. §§ 8–

---

1. In contrast, the "letter of intent" signed by plaintiff, which is part of the record, recites in one place that he is acquiring the stock from "Information Products, Inc." through Stroud. In another place the letter recites that the stock is being acquired from Renwell.

316 Supp.), which admittedly applies here:

"Unless otherwise agreed the transferor must on due demand supply his purchaser with any proof of his authority to transfer or with any other requisite which may be necessary to obtain registration of the transfer of the security * * * Failure to comply with a demand made within a reasonable time gives the purchaser the right to reject or rescind the transfer."

Both parties admit that they "otherwise agreed". Therefore, in order to determine whether plaintiff on the present record was entitled to a summary judgment of rescission, we are now confronted with the issue as to whether the facts material to an ascertainment of all the material terms of that agreement are incontrovertibly established.

█ Plaintiff contends that the record shows that he agreed to wait as long as six months before Stroud became obligated to deliver his certificates to him. Stroud contends that plaintiff agreed that its duty to deliver would arise only when the shares became registered by the S. E. C. and that the six months period was only an estimate, supplied by Renwell's attorney, of the time period within which the shares should be registered. Our examination of the deposition testimony leaves this issue in sufficient doubt to preclude the granting of a summary judgment on the basis thereof. But we do not view this evaluation of the record as necessarily dispositive. We say this because it is possible that unless Stroud as seller could show some prejudice to it arising from the delivery of a certificate to plaintiff, it could not insist that plaintiff was not entitled to the delivery of his certificate regardless of what the agreement

provided. Or it might well be implied that the registration by the S.E.C. was to be completed within a reasonable time. If such were the case an issue would arise as to whether Stroud was nevertheless relieved of any duty to deliver the certificates until demand was made by plaintiff.[2]

The record is in admitted conflict as to when plaintiff made demand for his certificates. According to plaintiff he commenced making demands in May 1964, shortly after the expiration of the "six month" period. Hundt testified that plaintiff's first demand was in January 1965. The resolution of this factual dispute would be material, inter alia, on the possible issue of the reasonableness of Stroud's actions after demand. Certainly the time lapse after demand, whenever it commenced, and the nature of the actions taken by Stroud, could well be important considerations for the finder of fact. They cannot be resolved at this stage on this record.

The summary judgment cannot stand in view of the numerous issues of material fact which are explicit and implicit in this record. We note that defendants raise several other possible legal and factual issues which we find it unnecessary to detail except to say they will be for consideration by the trial court at the proper time.

█ Finally, this record contains no basis to support the entry of the judgment against the defendant Hundt. It merely shows that he acted as agent for a disclosed principal. Nor is the mere fact that he was an officer of the corporate defendant a sufficient reason to impose personal liability on him.

The judgment of the District Court is reversed and the matter remanded for trial.

2. We are not now called upon to consider whether the custodian agreement █ which plaintiff denies he signed would create a relevant issue.